STEPHANIE YONEKURA
Acting United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
VIBHAV MITTAL (Cal. Bar No. 257874)
Assistant United States Attorney
      8000 United States Courthouse
      411 West Fourth Street
      Santa Ana, California 92701
      Telephone:  (714) 338-3534
      Facsimile:  (714) 338-3708
      E-mail:    vibhav.mittal@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                  UNITED STATES DISTRICT COURT

             FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>BICH QUYEN NGUYEN,<br><br>             Defendant. | No. SA CR 10-188-JLS<br><br>GOVERNMENT'S POSITION RE:<br>SENTENCING; EXHIBITS<br><br>Hearing Date: September 5, 2014<br>Hearing Time: 9:30 a.m.<br>Location:     Courtroom of the<br>              Hon. Josephine L.<br>              Staton |

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorney Vibhav Mittal,

hereby files its sentencing position.

This sentencing position and response is based upon the attached memorandum of points and authorities, exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 25, 2014        Respectfully submitted,

STEPHANIE YONEKURA
Acting United States Attorney

DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office

        /s/
VIBHAV MITTAL
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant Bich Quyen Nguyen ("defendant") was relentless in the execution of her fraud.  Defendant took over $34 million from over 200 victims based on false promises she made to the victims.  During solicitations, defendant told victims that:

1.    The victims would be investing in a certificate of deposit ("CD") issued by a bank based in Sweden called Sun Investment Savings and Loan ("SISL");

2.    The victims would earn substantial returns of 30% or more a year through defendant's use of a never-explained "trading platform";

3.    The money invested and returns were guaranteed; and

4.    The investments were secure and safe because the investments would be in "blocked" accounts and would not be moved during the term of the investment.  None of these statements to the victims were true.  But, defendant's false promises did persuade the victims to give up their life-savings.  Because of defendant's fraud, the victims were forced to put off their retirements and stretch their remaining resources to simply make ends meet.

Defendant had many opportunities to stop her criminal activity: the 2008 financial crisis, a cease-and-desist letter from the state of California, the civil injunction issued by the Honorable David O. Carter based on a filing of the Securities and Exchange Commission ("SEC"), and her arrest and indictment in this criminal case following an investigation by the Federal Bureau of Investigation ("FBI").  Nothing slowed defendant down in making false promises to victims about their investments with her.

1

Then, in her December 2013 trial, defendant told lies to the jury, putting the blame on a Daniel Overmyer (who coincidentally had died earlier), in an attempt to avoid conviction.  Defendant's lies at trial were uncorroborated by the bank records.  Most certainly, defendant never mentioned the infamous Mr. Overmyer to victims when she sold the victims on her phony investments.  Defendant never told the SEC, the FBI, or any other law enforcement about Mr. Overmyer's involvement before her trial in December 2013, because her testimony was not true and an obvious attempt to avoid conviction. Surprisingly, defendant even at sentencing maintains that Mr. Overmyer is to blame for her crime.  (PSR ¶ 30.)[1]

Despite her conviction at trial, defendant has expressed no remorse for her actions and failed to take any responsibility for the over $34 million that victims lost due to her fraud. Defendant's "pass-the-buck" attitude cannot be ignored when there are over 200 victims due to her fraud.

On July 31, 2014, the United States Probation Office ("USPO") issued a pre-sentence investigation report ("PSR"), calculating a

---

[1] Her letter claims that she was up to date on payments to victims as of April 2009, suggesting that she would have been able to make the victims whole if Judge Carter had not appointed a receiver in the civil case. (PSR at 11-12.)  However, her claims are unsupported by the evidence in this case.  The receiver has only been able to pay back to the victims approximately $2 million dollars since being appointed in the civil case.  Moreover, as early as February 2009, victims were complaining of their "accounts" being blocked and late payments.  (See, e.g., Trial Exhibits 133, 138, 139, 142, 148, 154, 155 and 252.)  In any event, her claims are meaningless since the bank records did not show her making anywhere near the type of income on investments she promised the victims. There was only one legitimate investment found–a Wells Fargo certificate of deposit–which defendant lost money on because she withdrew the money after only three months in February 2009.  (Trial Exhibits 225, 227.)  Certainly, the victims were not giving defendant money to invest in a Wells Fargo CD.

guidelines range of 240 months based on a total offense level of 43, a criminal history category of I, and a statutory maximum of 240 months.  (PSR at 3.)  The USPO recommended a sentence of 240 months followed by three years of supervised release.  (CR 131 at 2.)  The USPO recommended a restitution order in the amount of $34,885,705, based on the 239 victims.  (CR 131 at 1, 9-19.)

The government agrees with the criminal history calculations and guidelines range calculations of the USPO.  Based on defendant's enormous fraud and lack of regard for the law and her victims, the government recommends a sentence of 240 months of imprisonment followed by three years of supervised release and restitution in the amount of $34,885,705.

**II.  IMPACT ON THE VICTIMS**

Defendant lied to victims over and over again to convince the victims to give her their life-savings.  The jury saw defendant's presentation at a church in Rialto, California, on August 26, 2008, where defendant convinced victims of her knowledge in investments, including her statement that she used investment techniques that take investment bankers months to learn and the investment bankers still did not get defendant's techniques.  (<u>See</u> Trial Exhibits 42-46.)  As the government showed at trial, that presentation was one of many that defendant gave to convince victims to give her their money.

Many victims gave over $100,000, thinking their money was safe due to defendant's promises, including her false claims about her expertise in investments.  Even while the nation was in the midst of the worst financial crisis since the Great Depression, defendant continued to assure victims that their money was safe with her.

Despite the fact that the United States government needed to step in and bailout the nation's largest banks with billions of dollars in late 2008, defendant was still painting a rosy picture to victims about what defendant could earn for the victims. Defendant preyed on the financial insecurities that existed in late September 2008, telling victims, among other things, the following:

> While this market condition is very sad for small investors it creates a golden opportunity for those who are well prepared and have planned ahead to take advantage of this crash. Sun Group is one of those that has forecast and planned for such an event
>
> We are glad to report that all investments at Sun Group are fully protected and guaranteed, the capital as well as the promised returns. (Sun Group investors are among the very few happy campers in this current market.)
>
> All payments will be completed as scheduled

(Trial Exhibit 69 at 2 (attached as Exhibit 1).)[2]  Defendant's assurances to the victims were lies. Nothing in the bank records supported her claims the she had "forecast[ed]" or "planned" for the 2008 financial crisis. Defendant gave the victims CDs from a Swedish bank that did not exist but appeared to promise over 30% in return. (Trial Exhibit 221 (attached as Exhibit 2).)

At trial, victim L.B. testified about the investments she, her husband, and mother-in-law made with defendant through the Sun Celebrity Private Investment Club ("PIC"). As shown in the USPO's recommendation letter, victim L.B.'s family lost over $350,000 because of defendant's fraud. (CR 131 at 9-10).

---

[2] A select number of exhibits admitted at trial have been attached to the government's sentencing position for the Court's convenience.

4

In advance of sentencing, some of the victims provided letters to demonstrate the impact that defendant's fraud has had on their lives. Victims E.V. and L.V. provided a statement stating the following, in part:

> We invested a total of $435,000 with these people and they ran away with our money which was from our retirement funds and personal savings. We have been affected physically, emotionally, psychologically when we found out we have lost our money because they are conducting some Ponzi scheme. I, [L.V.], had developed depression, many sleepless nights as a result of this.

(Exhibit 3.) Victims E.V. and L.V. lost approximately $341,000 due to this fraud. (CR 131 at 19.)

Similarly, victims A.G. and D.G. provided a statement stating the following, in part:

> We invested [$170,000] in good faith and expected good returns, as they have promised to us during the presentation of Johnny Johnson and Bich Quyen Nguyen. These monies are our life savings and as retired people, this impacted us so much that we are deprived of enjoying life as other retired individuals do. We are living on fixed income. We have to stretch tight of what we have money on hand to make both ends meet.

(Exhibit 4.) Victim D.G. lost approximately $128,272.00 due to this fraud. (CR 131 at 12.)

**III. DEFENDANT'S OPPORTUNITIES TO STOP COMMITTING FRAUD**

During the commission of this fraud, defendant had many opportunities to stop herself, including the 2008 economic collapse and the state of California's cease-and-desist letter. She did not stop. She needed new money so that the fraud appeared to be earning the victims the promised monthly returns. She used the victims' financial fears in late 2008 to her fraud's advantage. After receiving a cease-and-desist letter from the state of California, she lied to the state of California, claiming she was not doing "any

5

banking business" in the United States.  (Trial Exhibit 93 (attached as Exhibit 5).)

At the SEC's request, the Honorable David O. Carter issued a civil injunction but that injunction did not stop defendant from offering her phony investment opportunities in Las Vegas, Nevada, and Norway.  (PSR ¶ 38.)  Immediately following post-indictment arraignment in this case in October 2010, while still on the sixth floor of this courthouse, defendant had the audacity to continue to tell victims that they would not lose a dime.  (PSR ¶ 27.)

Then, defendant decided to proceed to trial in this case in December 2013.  Defendant returned to telling lies.  This time, defendant passed the buck on a deceased person, Daniel Overmyer. Even after having been found guilty, defendant continues to lie, telling the USPO that it was Mr. Overmyer's fault the money was lost.  Defendant failed to explain why the bank records did not support her explanation and why she never disclosed this information to the victims or the government before her trial in December 2013. Defendant told the victims she was the President and CEO of the Swedish bank giving out these lucrative investments.  Now, coincidentally with federal charges facing her, Mr. Overmyer was the crook.

Defendant's explanations lack plausibility, as the government showed at trial with analysis of her bank records and the testimony of an economics professor who decisively concluded that defendant's promised returns were impossible.  The economics professor also discussed how defendant employed the classic techniques of investment fraud--not techniques of investment banking.

6

1 **IV.  ARGUMENT**[3]

2      The applicable guideline range in this case is 240 months, in

3 light of defendant's offense level of 43, criminal history category

4 of I, and the 240-month statutory maximum.  While not definitive,

5 the Guidelines range provides the starting point for finding a

6 reasonable sentence and must then be considered with the factors set

7 forth in Section 3553(a).  See <u>United States v. Cantrell</u>, 433 F.3d

8 1296, 1279 (9th Cir. 2006).  "To comply with the requirements of

9 <u>Booker</u>, the district court must have sufficiently considered the

10 Guidelines as well as the other factors listed in § 3553(a).  This

11 requirement does not necessitate a specific articulation of each

12 factor separately, but rather a showing that the district court

13 considered the statutorily-designated factors in imposing a

14 sentence."  <u>United States v. Nichols</u>, 464 F.3d 1117, 1125 (9th Cir.

15 2006) (quoting <u>United States v. Knows His Gun</u>, 438 F.3d 913, 918

16 (9th Cir. 2006)).

17      The § 3553(a) factors are as follows:

18      (1)  The nature and circumstances of the offense and the
            history and characteristics of the defendant;

19      (2)  The need for the sentence imposed –

20           (A)  To reflect the seriousness of the offense, to promote
                 respect for the law, and to provide just punishment
                 for the offense;

21           (B)  To afford adequate deterrence to criminal conduct;

22           (C)  To protect the public from further crimes of the
                 defendant; and

23           (D)  To provide the defendant with needed educational or
                 vocational training, medical care, or other
24               correctional treatment in the most effective manner;

25      (3)  The kinds of sentences available;

26      [3] The facts of this case are undisputed as neither party
27 objected to the offense conduct stated in the PSR.  Moreover, the
   government's statement of facts in the trial memorandum and the
   evidence presented at trial to this Court are incorporated by
28 reference.

(4)    The kinds of sentence and the sentencing range established for the offense and the defendant as set forth in the Sentencing Guidelines; and

(5)    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

1.    <u>A 240-month sentence is reasonable in light of the nature and circumstances of the offense and defendant's history and characteristics</u>

Defendant's conduct represents some of the worst criminal activity that the guidelines contemplate.  At an offense level of 43, even with no criminal history, her range would normally be life imprisonment if there was no statutory maximum in this case. Undoubtedly, her $34 million dollar fraud has a life-long impact on her over 200 victims.  But what sets defendant apart from others engaged in such investment fraud is how she has continued to defraud victims even after the SEC's action began and continued to make promises to victims after being indicted in this criminal case.

Defendant's background suggests that she comes from a family of modest means in Vietnam and has experienced notable tragedies.  (PSR ¶¶ 64-77.)  Defendant is 59 years old and has no criminal history. The government and the USPO's recommendation of 240 months is a five-level downward variance because of the 240-month statutory maximum that applies to the single count of conviction, 18 U.S.C. § 1349.  Any mitigating facts are accounted for by the government and the USPO's sentencing recommendation of a five-level downward variance.

For all these reasons, the government believes that a 240-month sentence is warranted.

8

2.    <u>A 240-month sentence is reasonable because it reflects the seriousness of the offense, promotes respect for the law, and provides a just punishment</u>

There is no question that defendant's offense and relevant conduct is serious.  Defendant defrauded over 200 victims of $34 million.  Much of her fraud took place at a time of great financial insecurity.  Defendant used this financial insecurity to her advantage.  Defendant's relentless nature was also evident in her conduct following the civil injunction and indictment in this matter.

Therefore, the government believes a 240-month sentence is necessary to address the seriousness of the offense and promote respect for the law.

3.    <u>A 240-month sentence is reasonable because it protects the public from defendant's crime and affords adequate deterrence to criminal conduct</u>

The public suffers in this case because of the danger that investment fraud plays on society.  The victims lost their retirement savings and now cannot live the lives they had planned to live before meeting defendant.  Many of the victims' lives have been changed forever.

Such wide-ranging frauds must be deterred.  Moreover, the unique conduct of defendant must be specifically deterred. Defendant:  lied when she told the state of California that she was not doing "any banking business" in the United States; violated the civil injunction that Judge Carter issued; told her co-defendant not to return to the United States and paid him money while he was living overseas; and continued to give false assurances to victims

9

following indictment.  Most troubling, of course, is the fact that defendant has shown no remorse or acceptance of responsibility for her actions.  Her pass-the-buck attitude (as shown in her testimony to the jury and in her letter to the Court (PSR ¶ 30)) cannot be ignored.

For these reasons, the government believes that a 240-month sentence is necessary to protect the public and deter defendant specifically and others like him more generally.

> 4.   <u>A 240-month sentence is reasonable because it does not create unwarranted sentencing disparities</u>

A sentence within the Sentencing Guidelines range may be the best way to satisfy this factor.  <u>See</u> <u>United States v. Mares</u>, 402 F.3d 511, 518-519 (5th Cir. 2005).  Thus, a five-level downward variance (which accounts for any mitigation in this case) is commensurate with what others in her position would receive.  <u>See</u> <u>United States v. Blinkinsop</u>, 606 F.3d 1110, 1116 (9th Cir. 2010) (noting that a within-Guidelines sentence is generally reasonable in the "mine run of cases").

**V.   CONCLUSION**

For these reasons, the government respectfully recommends that defendant be sentenced to 240 months of imprisonment followed by three years of supervised release and restitution in the amount of $34,885,705.

EXHIBIT 1

From: Mme. Bich-Quyen
Sent: 09/30/2008
To: admin@suninvestsl.com
Cc:
Bcc:
Subject: Sept.30, 2008 Urgent meeting follow up

Dear Sun Group leaders and members:

Attached is the summary of our last night discussion. Please forward to members of your private investment club.

Sincerely yours,

Mme. BichQuyen Nguyen
Sun Group President
Sun Investment Savings and Loan, C.E.O.
www.suninvestsl.com

CONFIDENTIALITY NOTICE: This is an unofficial response to your request for information and/or a private, proprietary and confidential communication and is for information purposes only. This is not intended to be, and must not be construed to be in any form or manner as a solicitation of investment funds or a securities offering. This e-mail is confidential and is legally privileged. Nothing in this message should be interpreted as a digital or electronic signature that can be used to authenticate a contract or other legal document. This electronic communication and any files included in the communication may contain confidential information that is for the intended recipient. If you are the recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED unless receiving pre-approval from author. If you have received this in error, please immediately notify us by return e-mail, fax and/or telephone and destroy this original transmission and its attachments without reading or saving in any manner.

1 Attachment

SAM04489

69-1

Distinguished Sun Group Leaders and Members:

You made me very proud last evening with your overwhelming support and attendance of all the local group leaders and many members of the Private Investment Clubs.

Within a few short hours you were able to communicate and put together an urgent meeting to discuss the looming crisis of the events that day. Delilah, while on vacation in Hawaii, also felt the urgency of the matter and lent her full support and instructed her staff to make all arrangements and open the Sun Empire Anaheim office for the group.

During crisis, our leaders have demonstrated their outstanding qualities with leadership through the unity, integrity and responsibility for the interest of our team members. We, the executive team of Sun Group are proud of you and are here to provide our best support for the development of your team.

Below I have summarized our discussion of last night so you may relay the same message to each team member that was not able to attend;

- The entire global market was severely damaged from the actions of the U.S. Congress failure to approve the bail out proposal
- Many small investors that are invested in hedge funds or investment companies lost partial or all of their investment or lifetime savings. (Including their 401K or retirement fund).
- The market will bounce back and go through many ups and downs due to uncertainty and direction
- However, even with the come back of the market the small investors that lost money from the previous day may not recover some of their earlier losses since their accounts may be a zero or below zero today. (Only the large institutional investors will gain…!)
- While this market condition is very sad for small investors it creates a golden opportunity for those who are well prepared and have planned ahead to take advantage of this crash. Sun Group is one of those that has forecast and planned for such an event
- We are glad to report that all investments at Sun Group are fully protected and guaranteed, the capital as well as the promised returns. (Sun Group investors are among the very few happy campers in this current market).
- All payments will be completed as scheduled
- September program is still available with the extension until October 15 at the same current rate
- After Oct. 15, 2008 we will reduce the rate of interest for the next October program and perhaps the November program as well. As we have taught you many times the market dictates the rate of return
- Sun Group Investment Division is working to structure a new and suitable investment program for the U.S. market
- All of Sun Group and Sun Group Private Investment Club members are requested

SAM04490

to participate in our sponsored fundraising charity event on October 23, 2008 for C.E.T. (Center of Employment Training) in San Diego
- Sun Group Manager, Agents and Group Leaders are requested to provide or obtain sponsorship for this event
- The days following this charity gala dinner event, Sun Group Executive Team will provide a few days (2-3 days, schedule to be announced) workshops and training sessions for our team members including one evening event that will be open for all Sun Group members and their invited guests. (Saturday night October 25, 2008)
- This 2 days conference will include advanced training for selected, qualified members of Sun Group Million Dollar table and pre-approved Wholesale Clients.
- During this time, Sun Group will announce our new products for investment and savings

Again I thank you for your continued loyalty and support given to Sun Group and we assure you that we are giving our best effort to bring about a better mankind.

SAM04491

69-3

EXHIBIT 2



**Sun Investment**
Savings and Loan

Gamla Torget 5, 753 20
Uppsala, Sweden
Website: www.suninvestsl.com

Tel. +46 1860 1860
Fax. +46 1860 1869
E-mail: underwriting@suninvestsl.com

*This*

*Term Deposit*

IN THE SUM OF

*One Million United States Dollars*

**($1,000,000.00 USD)**
*IS HEREBY ISSUED TO*

*Sun Celebrity LLC*

*of*

*1436 N. Ayala Drive, Suite 2B,*
*Rialto, California, 92376, U.S.A.*

*This Term Deposit matures on the **17th** day of **October, 2009** and is payable one (1) day thereafter*
*Interest is payable Monthly, calculated on daily rests, at **37.80%** per annum*

THIS CERTIFICATE OF DEPOSIT IS NON-TRANSFERABLE AND NON-ASSIGNABLE

Peter C. Do, *Treasurer*

BichQuyen Nguyen, C.E.O.

October 18, 2008

SW_BOX_1B3_0022833

221-2

EXHIBIT 3



**From:** L████  ████████████████
**Sent:** Friday, November 15, 2013 11:52 AM
**To:** ████████████████
**Subject:** Letter to Hon. Judge Josephine L. Staton and all concerned with these cases

This is regarding cases: United States v. Defendant(s) JOHNNY E. JOHNSON
Case Number 2010R02567 and Court Docket Number 10-CR-00188

United States v. Defendant(s) BICH QUYEN NGUYEN
Case Number 2010R02567 and Court Docket Number 10-CR-00188

We, E████ L. V████ , L████ L. V████ , and M████ L. L████ (deceased, father of L████ L. V████ ) are victims of the above cases mentioned.  Our address is ████████████████████ ████████ CA ████████  We invested a total of $435,000 with these people and they ran away with our money which was from our retirement funds and personal savings.  We have been affected physically, emotionally, psychologically when we found out we have lost our money because they are conducting some Ponzi scheme.  I, L████ L. V████ , had developed depression, many sleepless nights as a result of this.

We would like to be put on the restitution list so if there will be any compensation or settlement distribution we would be included.

Please notify us of any changes or decisions on these two cases.  We appreciate your assistance.

Respectfully yours,



E████  L. V████
L████  L. V████
M████  L. L████  (deceased)

1

EXHIBIT 4



**From:** A███ and D███ G███ I████████████████
**Sent:** Saturday, November 30, 2013 10:52 PM
**To:** ████████████████
**Subject:** Nguyen/Johnson Cases (Sun Empire/Tycoon/Infinity Investments)

Dear Honorable Judge Josephine Stanton,

We, A███ M. and D███ S. G███, 83 yrs. old and 66 years old respectively, are among the investors of Sun Empire/Tycoon/Infinity Investments c/o Johnny Johnson and Bich Quyen Nguyen.  We invested a total amount of One Hundred Seventy Thousand Dollars ($170,000.00) the receipts of which are attached herewith.

| INVESTORS: A███ AND D███ G███ | | | |
|---|---|---|---|
| | **Tycoon Club International, LLC** | | |
| **Date Wired** | **Wired Thru** | **Amount Wired** | |
| 09.26.08 | ████████████ | 60,000.00 | |
| 09.26.08 | ████████████ | 60,000.00 | |
| 09.29.08 | ████████████ | 10,000.00 | |
| 10.29.08 | ████████████ | 20,000.00 | |
| **Sub total** | | | 150,000.00 |
| | **Infinity Investment Club, LLC** | | |
| 02.19.08 | ████████████ | 10,000.00 | |
| 03.12.09 | ████████████ | 10,000.00 | |
| **Sub total** | | | 20,000.00 |
| **GRAND TOTAL** | | | 170,000.00 |

We invested these monies in good faith and expected good returns, as they have promised to us during the presentation of Johnny Johnson and Bich Quyen Nguyen.  These monies are our life savings and as retired people, this impacted us so much that we are deprived of enjoying life as other retired individuals do.  We are living on fixed income.  We have to stretch tight of what we have money on hand to make both ends meet.

We were informed by other investors that the sentencing of Johnny Johnson will be in March 2014.  We request that our names  be included in the restitution list before the sentencing of Johnny Johnson.  It is our prayer that somehow and some ways we can recover a part of our lost investment in case there is some kind of settlement.

Thank you very much for your help.

Respectfully,



A███ M. and D███ S. G██
██████████████████
██████████████████
██████████████████

EXHIBIT 5

## LAW OFFICE OF RAY W. SOWARDS

1289 S. Park Victoria Drive                                        Ph: 408-957-0807  Fx: 408-957-0663
Suite 201
Milpitas, CA 95035

Email rsowards@pacbell.net

October 15, 2008

Department of Financial Institutions
Mr. Paul T. Crayton
Senior Counsel
111 Pine Street, Suite 1100
San Francisco, CA 94111-5613

RE:  Unlawful Banking Business

Dear Mr. Crayton:

This is in response to your letter dated October 7, 2008, regarding Sun Investment Savings and
Loan.  First of all let me assure you that this company is not doing any banking business, loans
of any kind or an assortment of the two.  This is merely a U.S. Administrative Office.  The
company is actually located in Sweden.

It is certainly possible that someone may have used a letterhead or whatever that was improper
giving the wrong impression.  This has been brought to the attention of this company and
discussed with all concerned parties.  After a thorough investigation, I have found no evidence to
support you claim.  This will not happen again, if it did in the first place.  If it did happen as you
suggest then this company is certainly apologetic for any unnecessary concern that may have
been caused for you to author such a letter.

This company is certainly not interested in violating the law.  In the event this company was ever
to do business in this state as a Savings and Loan company it would be done the correct way with
all state laws being obeyed.  Rest assured this company has no interested in doing business here
as a savings and loan institution.

Nevertheless, I believe that all safe guards are in place now, and it will not be necessary to send a
Cease and Desist letter in the future.  In the event you have any questions, please feel free to call
my office.

Respectfully,

Ray W. Sowards
RWS/st

93-1